EFiled:  Dec 16 2016 12:57PM EST
Transaction ID 59965807
Case No. 11216-VCS

## COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone:  (302) 739-4397
Facsimile:  (302) 739-6179

Date Submitted:  October 26, 2016
Date Decided:  December 16, 2016

Michael J. Barry, Esquire
David M. Haendler, Esquire
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE  19801

Joel Friedlander, Esquire
Jeffrey M. Gorris, Esquire
Friedlander & Gorris, P.A.
1201 North Market Street, Suite 2200
Wilmington, DE  19801

S. Mark Hurd, Esquire
Thomas P. Will, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE  19801

Re:   *In re OM Group, Inc. Stockholders Litigation*
      Consolidated C.A. No. 11216-VCS

Dear Counsel:

On May 31, 2015, Apollo Global Management, LLC acquired all outstanding shares of OM Group, Inc. ("OM" or the "Company") for $34 per share in cash.  OM stockholders approved the transaction at a special meeting on August 10, 2015, by a margin of 10:1.  Within weeks of OM's announcement of the

transaction, six separate complaints were filed in this Court on behalf of OM stockholders. The operative Consolidated Amended Verified Class Action Complaint (the "Complaint") alleged that the OM Board of Directors (the "Board") rushed to sell OM in order to avoid a prolonged proxy fight with a shareholder activist and, in doing so, acted in a manner not consistent with maximizing present share value in violation of their fiduciary duties under *Revlon*.[1] Defendants moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6) for failing to state a claim upon which relief can be granted. The Court granted the motion to dismiss by opinion and order dated October 12, 2016 (the "Opinion").[2] Plaintiffs have moved for reargument under Court of Chancery Rule 59(f) (the "Motion"). For the reasons that follow, the Motion is denied.

---

[1] *Revlon, Inc. v. MacAndrews & Forbes Hldgs., Inc.*, 506 A.2d 173 (Del. 1986); *TW Servs., Inc. v. SWT Acq. Corp.*, 1989 WL 20290, at \*7 (Del. Ch. Mar. 2, 1989) ("In settling on a sale of a company for cash, the board's duty to shareholders is inconsistent with acts not designed to maximize present share value, acts which in other circumstances might be accounted for or justified by reference to the long run interests of shareholders.").

[2] *In re OM Gp. Inc. S'holders Litig.*, 2016 WL 5929951 (Del. Ch. Oct. 12, 2016).

As noted in the Opinion, the Complaint spun a narrative that the "OM Board rushed to sell OM on the cheap in order to avoid the embarrassment and aggravation of a prolonged proxy fight."[3] I characterized the narrative as "disquieting."[4] The questions raised by the Defendants' motion to dismiss, *inter alia,* were whether the well-pled facts in the Complaint actually supported the narrative and whether, in any event, the uncoerced, fully informed vote of the disinterested OM stockholders to approve the transaction required the Court to review the Board's conduct under the deferential business judgment rule.[5] I did not address whether the Plaintiffs had pled a claim for breach of fiduciary duty

---

[3] Opinion at *1.

[4] *Id.*

[5] *See In re KKR Fin. Hldgs. LLC S'holder Litig.*, 101 A.3d 980, 1001 (Del. Ch. 2014), *aff'd sub nom., Corwin v. KKR Fin. Hldgs. LLC*, 125 A.3d 304 (Del. 2015) (holding that when a transaction has been approved by a majority of the disinterested stockholders in a fully informed and uncoerced vote, the business judgment rule applies and "insulates the transaction from all attacks other than on the grounds of waste."). *See also Chester Cty. Ret. Sys. v. Collins*, C.A. No. 12072-VCL, at 2 (Del. Ch. Dec. 6, 2016) (ORDER) ("Because the merger received disinterested stockholder approval, the business judgment rule will apply and dismissal will result unless the plaintiff has "allege[d] that facts are missing from the [proxy] statement, identif[ied] those facts, state[d] why they meet the materiality standard and how the omission caused injury.") (citing *Malpiede v. Townson*, 780 A.2d 1075, 1087 (Del. 2001) (internal citation and quotations omitted)).

because I concluded that, based on the facts alleged in the Complaint, the Defendants had demonstrated that there was no reasonably conceivable basis upon which I could infer that the OM stockholder vote was coerced or uniformed.[6] Plaintiffs contend that this conclusion was the product of error and seek reargument.

The Court will deny a motion for reargument "unless the Court has overlooked a decision or principle of law that would have a controlling effect or the Court has misapprehended the law or the facts so that the outcome of the

---

[6] Opinion at *18. I note that the parties did not raise the burden of proof in briefing the motion to dismiss or at oral argument and, therefore, I did not address it expressly in the Opinion. *See* Opinion at *12, n.60 (noting that the Court was addressing the disclosure allegations even though the Plaintiffs had abandoned their pre-closing disclosure claims since the Defendants had "invoked the *Corwin* doctrine"). In any event, the burden is settled. *See In re KKR Fin. Hldgs.*, 101 A.3d at 999 (holding that defendants bear the burden of demonstrating fully informed stockholder approval). Vice Chancellor Laster recently explained the practical effect of the defense burden on a motion to dismiss in the context of *Corwin*: "The idea . . . is the plaintiff has to plead something such that it is reasonably conceivable that a disclosure claim could exist, and then we go from there. So the plaintiff doesn't have to show necessarily that there is something wrong with the disclosures or that it will prevail at trial, but the plaintiff has the initial burden of pleading something that shows that it is reasonably conceivable that the vote was not informed." *In re Columbia Pipeline Gp., Inc. S'holder Litig.,* C.A. No. 12152-VCL, at 23 (Del. Ch. Sept. 6, 2016) (TRANSCRIPT).

decision would be affected."[7] "Where the motion merely rehashes arguments already made by the parties and considered by the Court when reaching the decision from which reargument is sought, the motion must be denied."[8]

According to Plaintiffs, the Motion is grounded on the Court's "misapprehension of a pleaded fact."[9] The Complaint identified several areas in which the Proxy,[10] either by omission or misleading disclosure, allegedly undermined the validity of the stockholder vote approving the transaction. I analyzed each of these disclosure allegations in the Opinion and concluded that none of the alleged disclosure deficiencies were material.[11] Plaintiffs challenge

---

[7] *Stein v. Orloff*, 1985 WL 21136, at *2 (Del. Ch. Sept. 26, 1985).

[8] *Wong v. USES Hldg. Corp.*, 2016 WL 1436594, at *1 (Del. Ch. Apr. 5, 2016) (citing *Lewis v. Aronson*, 1985 WL 21141, at *2 (Del. Ch. June 7, 1985)).

[9] Pls.' Mot. for Reargument ("Motion") ¶ 1.

[10] I adopt the abbreviation conventions utilized in the Opinion.

[11] Opinion at *17.

this determination in one respect: "The disclosure issue in question for purposes of this motion concerns 'the evolution of Deutsche Bank's engagement.'"[12]

As characterized in the Motion, the Complaint alleged the following with respect to the engagement of Deutsche Bank as a second financial advisor to members of the OM Board in connection with the transaction: "(i) the independent directors decided to hire their own banker because of concerns that BNP Paribas (the banker first engaged to advise on the transaction) was conflicted due to its ties to management and a 'management bias' to sell OM to a private equity firm, (ii) the independent directors discussed an initial-stage retention of a second bank for advice on a flat-fee basis about whether to go forward with a sale process, with only the possibility that the second bank would be retained contingently for a

---

[12] Motion ¶ 2 (citing Opinion at *11). I note that, notwithstanding Plaintiffs' indication at the outset of the Motion that they are challenging the Court's interpretation of "a pleaded fact" regarding a single omitted disclosure, their identification of "the disclosure in question" as the "evolution of Deutsche Bank's engagement," and their singular focus on that omitted disclosure up to the final page of the Motion, Plaintiffs present a throwaway contention regarding the Court's treatment of another disclosure issue in a single sentence within the final paragraph. *See* Motion ¶ 12. The argument is cryptic and appears to rely on arguments already advanced in response to the motion to dismiss. It is not a proper argument on a Rule 59(f) motion. *Gore v. Al Jazeera Am. Hldgs. I, Inc.*, 2015 WL 4778339, at *3 (Del. Ch. Aug. 13, 2015) ("A court will not grant a motion for reargument if the motion is merely a rehash of arguments already made.").

second stage in the event it was determined to go forward with a sale of OM, (iii) OM's CEO was 'very resistant' to the outside directors' plan to hire a second bank, (iv) it is a mystery how Deutsche Bank ended up being retained on a contingent basis, and (v) the retention of Deutsche Bank on a contingent basis is something that the Board 'did nothing to prevent' and 'allowed,' not something that the Board consciously decided to do[.]"[13] The Plaintiffs argue that the Court mistakenly assumed that the OM Board made the decision to convert Deutsche Bank's fee arrangement from flat fee to contingency fee when, in fact, the alleged disclosure deficiency is the failure of the OM Board to explain how or why the fee arrangement was altered and who exactly approved the change.

The Opinion acknowledged that Plaintiffs were alleging that the Proxy "omitted information regarding the evolution of Deutsche Bank's engagement" and that the "Proxy failed to disclose that the OM Board initially contemplated hiring Deutsche Bank on a flat fee basis but then inexplicably converted the engagement

---

[13] Motion ¶ 4.

to a contingency fee arrangement."[14]    Nevertheless, Plaintiffs contend that the Court did not appreciate the nuance of its disclosure theory with respect to Deutsche Bank fees because, contrary to the discussion of the claim in the Opinion, the Complaint did not plead, and the Proxy did not disclose, that the Board actually agreed to the contingency fee arrangement.    The argument is rejected for two reasons.

*First*, as Plaintiffs acknowledge, the Complaint alleged that the Board contemplated at the outset of the engagement of Deutsche Bank the "possibility that the second bank [Deutsche Bank] would be retained contingently for a second stage in the event it was determined to go forward with a sale of OM[.]"[15]  This is precisely what appears to have happened.  Whether the OM Board indicated its acceptance of the "second stage" contingency fee arrangement by express agreement or by acquiescence is of no material moment.[16]

---

[14] Opinion at \*11, \*16.

[15] Motion ¶ 4 (citing Complaint ¶¶ 57–61).

[16] Opinion at \*16–17.

*Second*, by the time the fee arrangement was disclosed to stockholders in the Proxy, the Board had approved it one way or the other; the stockholders were told in no uncertain terms that the Company had approved an engagement letter whereby Deutsche Bank's compensation was, in part, to be "contingent upon consummation of the merger."[17] The Opinion concluded, therefore, that the Proxy fully disclosed Deutsche Bank's "incentives" and that further disclosure of the "OM Board's thinking regarding the terms by which Deutsche Bank would be engaged . . . [would be] precisely the sort of 'play-by-play' information that this Court repeatedly has eschewed requiring companies to disclose."[18]

Plaintiffs' citations to *RBC Capital Markets, LLC v. Jervis*[19] and *In re El Paso Corp. S'holder Litig.*[20] for the proposition that "the retention of second bank on a contingent basis can be conflict-reinforcing, not cleansing" is not helpful

---

[17] Opinion at *16 (quoting the Proxy at 47).

[18] *See* Opinion at *17 (citing *Dent v. Ramtron Int'l Corp.*, 2014 WL 2931180, at *15 (Del. Ch. June 30, 2014)). *See also In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1130 (Del. Ch. 2011) (noting that "Delaware law does not require that a fiduciary disclose its underlying reasons for acting") (internal citations omitted).

[19] 129 A.3d 816 (Del. 2015).

[20] 41 A.3d 432 (Del. Ch. 2012).

here.[21] The Supreme Court in *RBC Capital Markets, LLC* considered whether the engagement of a second investment bank that was engaged on a contingent fee basis would remedy the misconduct of the initially-engaged banker in connection with an aiding and abetting claim or would break the causal link between the first banker's misconduct and the harm to Rural/Metro Corporation stockholders.[22] In *El Paso*, the Court considered the extent to which the engagement of a second banker on a contingent fee basis would cleanse the conflict of interest of the banker initially engaged to advise the board on the challenged transaction.[23] Neither decision addressed in a disclosure context whether stockholders had been adequately apprised of the circumstances pursuant to which the later-retained

---

[21] Motion ¶ 9.

[22] *RBC Capital Markets,* 129 A.3d at 864 n.188 (affirming decision after trial finding investment bank liable for aiding and abetting breaches of fiduciary duty).

[23] *In re El Paso Corp.*, 41 A.3d at 434, 452 (noting that contingent fee gave second banker "financial incentives" to "prefer" the deal endorsed by the initially-engaged, conflicted banker but ultimately denying a motion for preliminary injunction so that "the El Paso stockholders [would] not be deprived of the chance to decide for themselves about the Merger.").

bankers were engaged or would be compensated, and neither involved the cleansing effect of a fully-informed stockholder vote under *Corwin*.

Here, Plaintiffs raised Deutsche Bank's engagement and fee arrangement for one purpose—to argue that the Complaint pled facts upon which the Court could conclude that it was reasonably conceivable the OM stockholders were not fully informed when they voted overwhelmingly to approve the OM/Apollo merger. I rejected that argument upon concluding that the Proxy adequately disclosed the circumstances surrounding the engagement of Deutsche Bank and that the omissions identified in the Complaint were not material. Accordingly, "[h]aving determined that a majority of the disinterested, uncoerced and fully informed OM stockholders approved the merger, [I determined] that the standard of review [must] shift from enhanced scrutiny to the business judgment rule."[24] And, "[w]hen the business judgment rule standard of review is invoked because of a vote, dismissal typically is the result."[25]

---

[24] Opinion at \*17 (internal citations omitted).

[25] *Id.*

Plaintiffs have failed to identify a fact the Court misapprehended such that the "outcome of the decision would be affected."[26] Accordingly, the Motion for Reargument must be DENIED.

Very truly yours,

*/s/ Joseph R. Slights III*

---

[26] *Wong*, 2016 WL 1436594, at *1.

12